IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Najeh Abdallah, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 16-cv-3967 |
| v. ) | |
| ) | Honorable Joan B. Gottschall |
| FedEx Corporate Services, Inc., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Najeh Abdallah ("Abdallah") brought this case as a class action under the Telephone Consumer Protection Act of 1991, as amended ("TCPA"), 47 U.S.C. § 227. Following the conclusion of merits discovery in 2019, this court partially denied defendants' motion for summary judgment, finding that genuine disputes of material fact exist on Abdallah's claim that defendants violated the TCPA by placing hundreds of "trace calls" to his cell number even though his number was listed on the national do-not-call registry. 2019 WL 4464305, at *5-10 (N.D. Ill. Sept. 18, 2019). Defendant FedEx Corporate Services, Inc. ("FedEx"), or a contractor providing call center services, places a "trace call" to the shipper when something is preventing the delivery of a package shipped internationally. *Id.* at *1 (citation omitted). Two FedEx contractors, C3/CustomerContactChannels, Inc. ("C3"), and Harte Hanks, Inc., are co-defendants here. *Id.*

Before the court is Abdallah's motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. Defendants have also filed two motions to strike certain exhibits Abdallah submitted in support of his motion for class certification.[1] Because Abdallah has not

---

[1] All three defendants join the opposition to class certification. ECF No. 182 at 27. However, the proposed class definitions involve calls placed by two of three defendants, FedEx Corporate Services, Inc. (FedEx), and

satisfied Rule 23's typicality and numerosity requirements, the court denies his motion for class certification. *See* Fed. R. Civ. P. 23(a)(1), (3).

## I. Background

### A. *Relevant TCPA Provisions*

Congress passed the TCPA in response to numerous consumer complaints about the abusive and intrusive use of telephone technologies by telemarketers and others. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343–44 (2020); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 369 (2012). The TCPA allows "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" governing the national do-not-call list to bring a private lawsuit and recover actual or statutory damages. 47 U.S.C. § 227(c)(5).

The parties' arguments here implicate several provisions of the regulations governing the national do-not-call registry.[2] First, the regulations prohibit any "person or entity" from "initiat[ing] any telephone solicitation" to a number on the national do-not-call registry. 47 C.F.R. § 64.1200(c)(2) (West effective Oct. 16, 2013 to Feb. 11, 2018); *see id.* § 64.1200(e) (extending protections to a wireless telephone number). The term "telephone solicitation" is defined to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *Id.* § 64.1200(f)(15). The definition of "telephone solicitation" has three exceptions. Under the regulations, a call or message does not qualify as a telephone solicitation if it is (i) "[t]o any person with that person's

---

C3/CustomerContactChannels, Inc. ("C3"). Mem. Supp. Mot. Class Certification 2-3, ECF No. 165. For clarity, the court refers to all three defendants collectively in this opinion.

[2] Effective March 29, 2021, an amendment to 47 C.F.R. § 64.1200(a)(9)(i) creates a safe harbor for certain "[c]alls made by a package delivery company to notify a consumer about a package delivery." *See* 86 Fed. Reg. 11443, 11447 (Feb. 25, 2021).

prior express invitation or permission;" (ii) "[t]o any person with whom the caller has an established business relationship;" or (iii) "[b]y or on behalf of a tax-exempt nonprofit organization." *Id.*; *see also* 47 U.S.C. § 227(a)(4).

### B. The 2019 Summary Judgment Opinion

Following discovery on the merits of Abdallah's individual claim, defendants moved for summary judgment.[3] ECF No. 95. This court denied summary judgment in part on September 18, 2019. 2019 WL 4464305.

At summary judgment, the fact "that one of the purposes of the trace calls Abdallah received was to get the package delivered to its intended destination" was undisputed. *Id.* at *6 (citation omitted). This court determined that a reasonable jury viewing the evidence in the light most favorable to plaintiff could "find that the trace calls were 'dual purpose' calls advertising or soliciting return shipping services." *Id.* at *10. The court identified three categories of genuinely disputed material facts: (1) whether defendants incentivize trace agents to persuade customers to purchase return shipping services; (2) whether defendants train trace agents indirectly to encourage customers to purchase return shipping services; and (3) whether the trace calls provide purchasers with more than a collateral opportunity to purchase shipping services. *Id.* at *7-10. The parties did not raise the issues of whether Abdallah consented to receive the calls and whether he had a prior business relationship with FedEx. *See id.* at *5.

### C. Class Certification Discovery

By agreement, the parties conducted approximately eight months of class certification discovery after this court partially denied defendants' motion for summary judgment. *See, e.g.*, Min. Entry, Oct. 31, 2019, ECF No. 127 (setting initial schedule); Min. Entry, Mar. 17, 2020,

---

[3] The 2019 summary judgment opinion summarizes the procedural history in detail. *See* 2019 WL 4464305, at *1–3.

ECF No. 150 (setting expert discovery deadlines and briefing schedule). Abdallah then filed his pending motion for class certification, and defendants filed their motions to strike certain exhibits to the motion for class certification.

The record contains uncontested evidence pertinent to the class certification analysis. During class certification discovery, which was supervised by the designated magistrate judge, Abdallah's attorney and counsel for defendants agreed to the production of a limited sample of outbound call log data. Decl. of E. Turin ¶ 17, ECF No. 165-7 (Pl.'s Ex. G). FedEx produced call logs for a 60-day period between October 21 and December 21, 2019.[4] *Id.*; Decl. of J. Campbell ¶ 7, ECF No. 182-6 (Defs.' Ex. F; noting that the production was subject to certain objections by FedEx).

Some background on FedEx's customer service practices and data management frames the agreed discovery. According to undisputed evidence in the record, FedEx maintains information about outbound calls in several places. First, FedEx keeps logs of all outbound customer service calls. *See* Decl. of E. Neal ¶¶ 4–5, ECF No. 182-5 (Defs.' Ex. E). These logs capture all numbers dialed and the date and time of all customer service calls placed by FedEx. *Id.* ¶ 5. The logs do not differentiate between the trace calls at issue here and other customer service calls. *See id.*

FedEx separately utilizes a "customer interaction platform" database called OneSource. *Id.* ¶ 6. A new "case" is created in OneSource for every new customer interaction, including trace calls. *Id.* ¶¶ 6-8. OneSource cases are also created for a variety of other reasons, such as when a customer calls FedEx's toll-free customer service number. *See id.* ¶¶ 6-8. Customer

---

[4] C3 produced call logs for the period of December 2015 to May 2016. Turin Decl. ¶ 17. Plaintiff followed up on FedEx's production but apparently did not follow up on C3's production. *See id.* ¶¶ 17-19.

4

service agents must document all outbound calls in OneSource, and each case has a case notes field for documenting the conversation. *See id.* ¶ 9.

Case data reside in OneSource until they are archived in FedEx's Enterprise Data Warehouse ("EDW"). *See* Couture Decl. ¶¶ 3-4. Archival occurs either when the case is closed or after 60 days have elapsed. *Id.* ¶ 4. Data are transferred to keep OneSource from becoming bogged down processing archival information. *See id.* ¶ 3. There is a factual dispute about whether case notes stored in EDW can be searched efficiently and reliably in order to identify trace calls and calls placed to the wrong number, but the court does not weigh into that dispute today.

Under the agreed class certification discovery protocol, FedEx produced call logs for a 60-day period. Turin Decl. ¶ 17. FedEx produced a list of 131,441 phone numbers called during the 60-day sample period. Campbell Decl. ¶ 7. Abdallah's counsel eventually contacted FedEx's counsel and advised that his expert had identified 5,940 phone numbers on the national do-not-call registry that had received more than one phone call in a 30-day period. *Id.* ¶ 8. The parties agreed to the production of OneSource data corresponding to a sample of 150 of those numbers.[5] *Id.* FedEx searched OneSource for associated cases and case notes. *See* Neal Decl. ¶¶ 15-16. The search netted 3,424 case notes. Campbell Decl. ¶ 11. Defendants' counsel then reviewed the notes for responsiveness. *See id.* ¶¶ 12-14. Defendants excluded calls they deemed to be obviously nonresponsive, such as "case notes for calls solely to package recipients, internal

---

[5] Although the court does not reach defendants' motions to strike Verkhovskaya's (plaintiff expert) declaration, the court notes that she characterizes the sample of call notes as not statistically significant. Decl. of A. Verkhovskaya ¶ 9, ECF No. 165-16 (Pl.'s Ex. P). Abdallah does not explain why he agreed to rely on evidence his own expert believes is not sufficiently representative of the proposed class and subclass. This further weakens the persuasive weight of much of Abdallah's evidence. Nothing in this opinion should be understood as implying that the data produced during class discovery constitute a statistically significant sample of calls to proposed class and subclass members.

5

calls between or among FedEx offices or employees, and calls with only interactions that did not involve the status of shipments, as these calls would not potentially give rise to a return shipment or discussion about return shipment options. This process was also designed to exclude non-trace calls." *Id.* ¶ 13. Following this review, FedEx produced a spreadsheet listing 2,354 responsive case notes. *Id.* ¶ 15. The parties base their class certification arguments on this production and their respective analyses of it.

## II. Analysis

As the party seeking class certification, Abdallah bears the burden to prove by a preponderance of the evidence that the four requirements of Rule 23(a)–numerosity, commonality, typicality, and adequacy of representation—and the requirements for at least one of the three categories under Rule 23(b) are satisfied. *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020). The court must conduct a rigorous analysis of Rule 23(a)'s requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). Defendants contest every component of the Rule 23 analysis and raise an additional procedural objection to Abdallah's alteration of the class definition proposed in his second amended complaint. *See generally* Resp. to Mot. Class Certification, ECF No. 182. "Failure to meet any of [Rule 23(a) or (b)] requirements preclude class certification." *Orr*, 953 F.3d at 497 (citing *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)). The Rule 23(a) requirements of numerosity, typicality, and adequacy suffice to resolve Abdallah's motion for class certification.

### A. *Proposed Class Definitions*

Abdallah proposes to certify the following class and a single subclass defined as:

The Class: All persons in the United States who received at least two trace calls placed by FedEx or C3 on their cellular telephone in any 12-month period since July 1, 2015 and which were received more than 31 days after the recipient's telephone number was registered on the National Do-Not Call Registry.

6

> The Subclass: All persons in the United States who received at least two trace calls placed by FedEx or C3 on their cellular telephone in any 12-month period since July 1, 2015 and which were received more than 31 days after the recipient's telephone number was registered on the National Do-Not Call Registry and who were not a FedEx customer.

Mem. Supp. Mot. Class Certification 2-3, ECF No. 165.

The parties refer to the proposed subclass as a "wrong number" subclass. *E.g., id.* at 14. Abdallah explains that the subclass's defining characteristic is that all of the calls to subclass members were erroneously placed to the wrong person. Reply 9, ECF No. 187. Abdallah never explains exactly why he believes the subclass is necessary. *See id.* Regardless, the proposed class and subclass must "satisf[y] the requirements for certifying a class, so that each could be the plaintiff class in a separate class action." *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012).

### B. *Motions to Strike*

Defendants separately move to strike three exhibits, in part or in whole, to Abdallah's motion for class certification. ECF Nos. 180, 181. Defendants primarily challenge the admissibility of the expert report of Anya Verkhovskaya ("Verkhoyskaya") under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993). ECF No. 181. The defendants contend in their second motion to strike that portions of the Verkhovskaya declaration and the declaration of one of Abdallah's lawyers, Eugene Y. Turin ("Turin"), contain inadmissible hearsay from Verkhovskaya not disclosed in her report or at her deposition. ECF No. 180.

The court must resolve material factual disputes when deciding a motion for class certification. *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). And "whenever

7

an expert's report or testimony is critical to a class certification decision, a district court must rule conclusively on a challenge to the expert's qualifications or opinions before ruling on class certification, without regard to whether the district court ultimately grants or denies that motion." *Messner*, 669 F.3d at 813 (citing *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010)). Conversely, "a *Daubert* hearing is unnecessary when certification is denied on grounds not addressed by the expert in dispute." *Id.* at 814 (explaining that the court need not rule on a *Daubert* challenge "if the court decides the motion for class certification on grounds not addressed by the witness").

Here, defendant's motions to strike implicate no facts critical to the dispositive class certification analysis.[6] Nor does the court need to resolve disputed facts. As explained below, defendants' numerosity, typicality, and adequacy challenges can be resolved based on undisputed evidence submitted by both sides.[7] *See, e.g., Doe v. City of Harvey*, 2014 WL 4724381, at *4 (N.D. Ill. Sept. 22, 2014); *Seary v. eFunds Corp.*, 2010 WL 183362, at *9 (N.D. Ill. Jan. 20, 2010), *on reconsideration sub nom. Searcy v. eFunds Corp.*, 2010 WL 1337684 (N.D. Ill. Mar. 31, 2010).

### C. Numerosity

To satisfy the numerosity requirement, plaintiff must show that the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Abdallah cites nonbinding statements in district court cases to the effect that he need only provide a good faith estimate of the class's size. He also argues that he must present only "concrete evidence that

---

[6] Were the court to reach other class certification issues, Verkhovskaya's opinions would be critical. Verkhovskaya opines that it is possible, common, and administratively feasible to identify and send notice to members of the proposed class and subclass using the methodology she proposes. *See* ECF No. 176 at 3-4 (Pl.'s Ex. J under seal; summarizing opinions).

[7] The Seventh Circuit has instructed courts harboring doubts about whether a *Daubert* challenge is critical to resolve the *Daubert* issue. *Messner*, 669 F.3d at 812. This court harbors no such doubts here.

goes beyond speculation" satisfying the numerosity requirement. Reply 6 (citing *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill. May 27, 2008)).

Following the completion of briefing on the pending motions, the Seventh Circuit clarified in *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 777 (7th Cir. 2021), that a proponent of class certification "bears the burden of proving by a preponderance of evidence that his proposed class is sufficiently numerous." (citing *Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 433 (7th Cir. 2015)). The Seventh Circuit described the Rule 23(a)(1) numerosity requirement as follows:

> Our cases have recognized that "a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Orr*, 953 F.3d at 498 (quoting *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017)). But a class of 40 or more does not guarantee numerosity. *See Pruitt v. City of Chi.*, 472 F.3d 925, 926 (7th Cir. 2006) (recognizing that "[s]ometimes 'even' 40 plaintiffs would be unmanageable").
>
> The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder. Answering that question requires evaluation of "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1762 (3d ed. 2020).

*Anderson*, 986 F.3d at 777.

Regarding the subclass of calls to the wrong phone number, Abdallah concedes that "defendants are correct that Plaintiff did not identify any Subclass members from the limited data set of One Source [sic] case notes Plaintiff received." Reply 7. This is true even if the court were to consider the evidence that is the subject of defendants' motions to strike. *See id*.

In addition to Abdallah's concession that he has produced no evidence of other "wrong number" trace calls, uncontested evidence in the record raises a legitimate doubt that any other members of the subclass exist. Specifically, defendants provide new details about the database

glitch that resulted in Abdallah's receipt of hundreds of trace calls.[8]  A FedEx "Technical Principal" explains that Abdallah called FedEx's customer service phone number to inquire about a package he had shipped to Jordan.  Couture Decl. ¶¶ 2, 12.  Because Abdallah did not give his name when he called, his contact information became associated in FedEx's OneSource system with the code "NFN NLN" ("no first name, no last name").  *Id.* ¶ 12.  "For a period after that, any case that was created with the code 'NFN NLN' was assigned Mr. Abdallah's phone number as a secondary number."  *Id.* ¶ 13.  The error resulted in Abdallah's phone number being incorrectly populated as the secondary number for more than one thousand other customers before FedEx identified and corrected the problem several months later.  *See id.* ¶¶ 13-14.  FedEx knows of no other instance in which the same database glitch occurred, *id.* ¶ 15, and Abdallah points to no evidence that what happened to Abdallah has recurred.

Abdallah nevertheless urges the court to draw the inference that a sufficiently large group of subclass members exists to make joinder impracticable based on (1) the fact that defendants have implemented specific policies for tracking calls placed to an incorrect number; (2) the fact that the sample shows that multiple people were called in error when defendants were making other customer service calls (but not the trace calls at issue here); and (3) "the vast scope of defendants' trace call operation."  Reply 7 (citations omitted).  In some circumstances, drawing inferences like those Abdallah proposes may be warranted, for "[t]he [numerosity] inquiry is fact and circumstance dependent."  *Compare Anderson*, 986 F.3d at 778 (reviewing for abuse of discretion and affirming denial of class certification), *with Orr*, 953 F.3d at 498 (no abuse of discretion despite "gaps" in proof that made evidence "barely" sufficient to support inference that proposed class of prisoners satisfied numerosity requirements).

---

[8] These details were not provided at summary judgment.  *See* Defs.' Joint LR 56.1 Statement of Material Facts, ¶ 19, ECF No. 97.

The court cannot infer here that a sufficiently numerous subclass exists. Abdallah had the opportunity to conduct nearly nine months of class certification discovery following summary judgment. He agreed to a method for sampling call data to support his class certification motion, but the sampling method yielded no evidence that any other "wrong number" calls were made to members of the proposed subclass. *See* Turin Decl.¶ 17; Reply 7. Even assuming for the sake of argument that unidentified subclass members exist, how could the court determine how many there are? One additional class member would not be enough, but one hundred might. *See Anderson*, 986 F.3d at 778 (declining to draw bright lines on the number of class members needed to meet the numerosity requirement). The point is that the court must speculate about how many, if any, additional members of the proposed subclass there are. Given all of these circumstances and in view of the uncontested evidence casting doubt on whether any other subclass members exist, Abdallah must do more than speculate about the subclass's size to carry his burden to prove that joinder of all subclass members is not feasible. *See Anderson*, 986 F.3d at 778 (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)) (holding that it was reasonable to require the plaintiff to "do more than speculate" about the number of class members).

However, undisputed evidence submitted by defendants supports a finding that the proposed class, but not the subclass, satisfies Rule 23(a)(1)'s test of numerosity. After defendants produced their initial sample of calls during discovery, Turin, plaintiff's attorney, requested case notes on calls to 150 numbers that his expert had been identified as potentially satisfying the proposed class definition. *See* Campbell Decl. ¶ 8. FedEx identified 3,424 case notes associated with trace calls to those 150 phone numbers. *Id.* ¶ 11; *see also* Neal Decl. ¶ 16. FedEx's legal professionals then reviewed those case notes for relevance and responsiveness and

11

ultimately produced a list of 2,414 case notes which "involved calls to other than package shippers and which did not involve the status of a package." *See* Campbell Decl. ¶¶ 13-16.

Defendants maintain that an unspecified number of these records do not even arguably meet the class definition. *Id.* ¶¶ 15-17. Nevertheless, defendants produced more than two thirds of the case notes they initially identified as potentially responsive. *See id.* ¶¶ 11, 15. However, it is reasonable to infer, given the large number of records for these 150 numbers, that the entire class, which again covers a greater time period, is large enough to make joinder infeasible.

### D. Typicality and Adequacy

The parties analyze typicality and adequacy together. Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Typicality can exist "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 723 (N.D. Ill. 2016) (citing *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009)). "Typicality ensures that class representatives have an 'incentive to litigate vigorously' the claims of the absent class members." *Howard v. Cook Cnty. Sheriff's Off.*, ___ F.3d ___, 2021 WL 822744, at *13 (7th Cir. Mar. 4, 2021) (citing *Muro,* 580 F.3d at 493). There must be "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Orr*, 953 F.3d at 500 (citing *Spano v. Boeing Co.,* 633 F.3d 574, 586 (7th Cir. 2011)). Hence the Seventh Circuit has held in a TCPA class action that "[t]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d

12

721, 726 (7th Cir. 2011) (citing *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980)).

The adequacy of representation requirement focuses on whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A class representative must be part of the class and must 'possess the same interest and suffer the same injury' as the other class members." *Orr*, 953 F.3d at 499 (citing *Wal-Mart*, 564 U.S. at 348).

The numerosity problem with Abdallah's proposed subclass foreshadows the typicality problem, but here the problem affects the class as a whole. *Cf. Culver v. City of Milwaukee*, 277 F.3d 908, 911-12 (7th Cir. 2002) (explaining that the plaintiff's inability to serve as representative of one of two proposed subclasses demonstrated that his claim was not typical of the class as a whole). "Seventh Circuit precedent [] teaches that commonality and typicality are generally met where . . . a defendant engages in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Physicians Healthsource*, 318 F.R.D. at 723 (citing *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008)) (certifying class in TCPA "junk fax" case; brackets in original).

Abdallah attempts to define the common course of conduct broadly as the placing of trace calls, but as explained above, uncontroverted evidence in the record establishes that Abdallah's receipt of hundreds of trace calls resulted from a unique problem with FedEx's OneSource database. *See* Couture Decl. ¶¶ 12-15. Abdallah has produced no evidence, and does not argue, that any other person ever received calls as the result of a similar problem. *See id.* ¶ 15; Reply 7–8.

On this record, the unique circumstances that gave rise to Abdallah's receipt of unwanted trace calls makes his legal and factual arguments markedly different from those of the class. One of the allegedly common issues for class resolution is whether class members had a prior business relationship with FedEx.[9] Yet Abdallah advances arguments unique to him that he effectively terminated any business relationship he had with FedEx when he began receiving trace calls from FedEx. *See* Reply 7–8. Specifically, Abdallah points to his verbal requests that the trace calls be stopped, a letter he later wrote to FedEx asking for the calls to stop, and the filing of this lawsuit. *See id.* Abdallah points to no other evidence, and does not suggest, that any other class members did any of these things or similarly took steps arguably terminating whatever business relationship they had with FedEx. *See id.* Thus, Abdallah intends to pursue arguments for establishing defendants' liability unavailable to other class members on this record. That makes his claims atypical under Rule 23(a)(3) because he lacks an adequate incentive to pursue the interests of absent class members.[10] *See Howard*, 2021 WL 822744, at \*13; *CE Design*, 637 F.3d at 727-28; *Muro,* 580 F.3d at 492.

Thus, Abdallah has failed to carry his burden to submit enough evidence to find that his claims, which appear to result from a one-time database glitch, are adequately comparable with those of the absentee class members. *See Orr*, 953 F.3d at 500 (reversing class certification).

---

[9] The plaintiff lists five allegedly common issues: (1) whether the trace calls were "telephone solicitations;" (2) the existence of valid consent; (3) whether the established business relationship exemption applies; (4) defendants' liability under the TCPA; and (5) damages. Mem. Supp. Mot. Class Certification 17-21.

[10] At summary judgment on the merits, plaintiff did not pursue a resolution of the alleged common issues of consent and the existence of a prior business relationship. *See Abdallah*, 2019 WL 4464305, at \*5. He has not explained this omission. In the absence of an explanation, Abdallah's failure to pursue the allegedly common issues further suggests that he lacks an adequate incentive to do so.

### III. Conclusion

For the reasons stated, plaintiff's motion for class certification is denied. It is denied as to the subclass on numerosity grounds. It is denied as to the class as a whole on typicality grounds. Defendants' motions to strike certain exhibits to the motion for class certification are denied as moot.

Dated: March 16, 2021 /s/
Joan B. Gottschall
United States District Judge